Carroll
No. 86-169

### FUNTOWN USA, INC.

### v.

### TOWN OF CONWAY

June 3, 1987

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester, and *Law Offices of O. Lee Gregory*, of Conway (*Arthur G. Greene, Joseph A. Foster*, and *O. Lee Gregory* on the brief, and *Mr. Greene* orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord, and *Hastings & Son P.A.*, of Fryeburg, Maine (*Russell F. Hilliard* and *Peter G. Hastings* on the brief, and *Mr. Hilliard* orally), for the defendant.

BROCK, C.J. In *Funtown v. Town of Conway*, 127 N.H. 312, 499 A.2d 1337 (1985), we considered an appeal by the Town of Conway from a decision of the superior court in favor of Funtown USA, Inc. (Funtown), a recreational facility located in North Conway. After we affirmed the award of attorney's fees, the specific amount to be awarded was determined on remand by the Superior Court (*Dickson*, J.), approving a Master's (*R. Peter Shapiro*, Esq.) report. The defendant appealed.

The facts of the case are more fully set out in the earlier opinion, but are summarized for purposes of this appeal. One of the two principals of Funtown, Ann Goldman, purchased land in North Conway in November 1978 with the intent to construct a recreational facility, including a water slide. Construction was begun after a "registration of intent to build" was filed pursuant to a town ordinance. Having been informed that a building permit under the town's amended zoning ordinance would be required in order to build the water slide, Funtown's other principal, Mark Goldman, applied for such a permit in October 1981. After a public hearing, the town board of selectmen (board) held a meeting, which Mr. Goldman's counsel attended in order to deal with a compilation of traffic complaints submitted to the board by the local police chief. Mr. Goldman's counsel left the meeting after being told that the matter would be considered at another time; however, after he left, the board voted to deny the permit request. An article unfavorable to the project authored by the assistant town manager was also published that same day in a local newspaper.

After an unsuccessful appeal to the zoning board of adjustment (ZBA), Mr. Goldman submitted a new application for a building

permit to the board of selectmen, incorporating an improved parking plan. After the board failed to act, Mr. Goldman filed a petition for rehearing with the ZBA, which reaffirmed the denial.

The plaintiff appealed to the superior court, during the pendency of which appeal the Conway Zoning Ordinance was amended to prohibit the construction of water slides. The master's findings and rulings, approved by the superior court, were as follows:

"(1) that Funtown had a vested right to construct the water slide and that the town should be enjoined from interfering with the installation;

(2) that Funtown could construct the water slide by virtue of its 'intent to build;'

(3) that the ZBA decision was unlawful and unjust and that the town should issue a building permit;

(4) that ordinances adopted on March 9, 1982, purporting to affect plaintiff's project were inapplicable or unconstitutional;

(5) that plaintiff should be awarded legal fees; and

(6) that the town's action constituted a taking for which plaintiff was entitled to compensation."

*Funtown*, 127 N.H. at 313, 499 A.2d at 1338. The town appealed only on the issues regarding the award of attorney's fees and the finding of inverse condemnation, as a building permit to construct the slide had been granted in May 1984.

We reversed on the inverse condemnation issue, holding that because "the denial of use was neither 'substantial' nor 'especially onerous,' . . . no taking of plaintiff's property occurred. . . ." *Funtown*, 127 N.H. at 318, 499 A.2d at 1341 (quoting *Burrows v. City of Keene*, 121 N.H. 590, 598, 432 A.2d 15, 20 (1981)).

However, we affirmed the award of attorney's fees. In *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977), we held that

"[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention, an award of counsel fees on the basis of bad faith is appropriate. This principle . . . merely shifts the cost of what should have been an unnecessary judicial proceeding to the responsible party. . . ."

*Id.* at 691, 377 A.2d at 619 (citation omitted). Applying this standard in *Funtown*, we held that the defendant's bad faith justified the award of attorney's fees because of the board's use of delaying tac-

tics, the assistant town manager's publication of an article on Funtown during the ongoing official proceeding, and the police chief's assumption of a dual role in the controversy as both a neighbor of the facility and a town administrator.

On remand, and after a hearing, the master recommended that the defendant be required to pay the plaintiff's legal fees in the amount of $118,352.79; the expert witness's fee of $700 for court appearances; and the legal bill of prior counsel of $19,004.53.

The master found that the fee records were complete; that the rates charged were reasonable in view of each lawyer's skill and the rates charged in the area; that the billing procedure of the McLane firm was consistent with that of similar firms in the area; and that there was no unreasonable duplication of services or time spent on the case. He also found that the structure of legal representation used by the McLane firm was reasonable and efficient. The master further refused to reduce the plaintiff's legal fees by $12,540.38, the amount attributable to the appeal on the inverse condemnation issue. He also noted that under the "lodestar" approach of the federal courts, the time spent and the rates charged were reasonable.

The town appeals the decision below on two grounds: first, that the plaintiff should not have been awarded attorney's fees incurred in the inverse condemnation appeal, as the plaintiff did not ultimately prevail thereon; and, second, that the total amount of the award ($137,357.32) was unreasonable. The plaintiff, of course, requests affirmance of the trial court's order and, in addition, requests (1) interest on the fee award itself and (2) attorney's fees incurred in preparing and prosecuting its motion for attorney's fees in the court below and in defending this appeal, amounting to $11,500.

We first address the issue of whether the fee award should be reduced by $12,540.38, the cost of the appeal on the inverse condemnation issue, keeping in mind that our review is limited by an abuse of discretion standard, see *Drop Anchor Realty Trust v. Hartford Fire Ins. Co.*, 126 N.H. 674, 681, 496 A.2d 339, 344 (1985), as the conditions for *de novo* review of the trial court's determinations are not present here, see *Grendel's Den v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984).

The parties rest their respective positions on divergent interpretations of *Hensley v. Eckerhart*, 461 U.S. 424 (1983), a fee award case brought under 42 U.S.C.A. § 1988 (1981), which involved partially successful plaintiffs in a § 1983 civil rights suit. The plaintiffs-respondents had prevailed on five of six claims made under a single general claim of unconstitutional treatment and conditions at the Forensic Unit of the Fulton State Hospital in Fulton, Missouri. They

wished to recover attorney's fees representing time spent on all of the claims. The petitioners opposed awarding fees for, *inter alia,* time spent on unsuccessful claims. The United States Supreme Court held that the district court had not properly considered the relationship between the degree of success and the amount of the award. In the course of its opinion, the Court stated that the initial calculation of attorney's fees should be made by multiplying the hours reasonably spent by a reasonable hourly rate. Then, other factors should be taken into consideration in adjusting the amount up or down, including the result obtained. The Court then stated that where the plaintiff has only partially prevailed, "two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 434. Where the unsuccessful claims are unrelated to the other claims, no fee should be awarded for services rendered thereon.

We note first that we deal here only with legal fees incurred by the plaintiff in the first appeal regarding the inverse condemnation issue, as that is the extent of the challenge made by the defendant. In addition, *Hensley* is not controlling authority because there is no § 1983 claim being made here.

█ In this instance, the inverse condemnation claim became severable on appeal from the rest of the claims involved and was analytically separate as well. The requested relief below was damages, whereas the other claims mostly involved requests that the court prohibit or require certain actions by town officials. In addition, the taking theory itself was distinct from the other grounds raised by the plaintiff. We hold that the plaintiff's ultimately unsuccessful claim of inverse condemnation was sufficiently severable on appeal and as a theoretical matter from the rest of the suit so that the award should have been reduced to exclude amounts expended in defending against the successful appeal on that issue.

██ We next address the reasonableness of the remainder of the award. In *Couture v. Mammoth Groceries, Inc.,* 117 N.H. 294, 371 A.2d 1184 (1977), taking our cue from the Code of Professional Responsibility, we set out eight guiding factors for use in determining whether an attorney's fee is reasonable:

> "the amount involved, the nature, novelty, and difficulty of the litigation, the attorney's standing and the skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed on his clients."

*Id.* at 296, 371 A.2d at 1186. Reading the report of the master as a whole, we cannot say that he abused his discretion in awarding the amounts he did. While we have held that counsel fees attributable to the appeal of the inverse condemnation issue should not have been awarded, the other amounts awarded were not unreasonable. The proceedings in this case were long and convoluted, and required substantial amounts of lawyer and paralegal time. The master's report was a careful and complete review of the billing records of Funtown's attorneys, and while we might not have made the same determination in the first instance, we have no occasion to second-guess the determinations arrived at therein. *See City of Riverside v. Rivera,* 106 S. Ct. 2686, 2699 (1986) (Powell, J., concurring).

The last issue presented for our consideration involves the plaintiff's requests (1) that the defendant be required to pay interest on the fee award from the date of the trial court's decision, (2) that the defendant be ordered to pay the plaintiff's attorney's fees incurred with respect to its motion for fees, and (3) that it be required to pay plaintiff's fees incurred in defending this appeal. We treat the first and third requests as requests made under the aegis of RSA 490: 14-a and New Hampshire Supreme Court Rule 23.

RSA 490:14-a provides that

> "[i]f upon the hearing of any appeal, . . . it clearly appears that the appeal . . . is frivolous, immaterial or intended for delay, then the court, upon motion of a party or its own motion, may award against the moving party double the amount of the costs incurred by the prevailing party beginning with the entry of the appeal, . . . and also interest at the rate of 12 percent per annum on any amount which has been previously found due or for which a verdict has been recovered or which the moving party has been ordered to pay."

Supreme Court Rule 23 provides that

> "[i]n the interest of justice in extraordinary cases, but not as a matter of right, the supreme court in its sole discretion may award attorneys' fees related to an appeal to a prevailing party if the appeal is deemed by the court to have been frivolous or in bad faith."

We hold that the plaintiff is not entitled to interest on the fee award or to attorney's fees generated by this appeal because the appeal was neither frivolous nor in bad faith. The amount of attorney's fees awarded was quite large and by no stretch of the imagination could it be said that the appeal was frivolous, particularly in

view of the fact that the defendant has prevailed on one of the issues it raised. In addition, we have not been presented with, nor do we find, evidence of bad faith on the part of the defendant in bringing this appeal.

As to the plaintiff's request for fees incurred with respect to its motion for fees made below, the record discloses no request for fees to the trial court and the issue thus has not been properly preserved.

*Affirmed in part; reversed in part.*

All concurred.